JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletreedeakins.com
DAPHNE PIERRE BISHOP, CA Bar No. 217519
daphne.bishop@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:   213.239.9800
Facsimile:    213.239.9045

Attorneys for Defendants
PANDA RESTAURANT GROUP, INC. &
PANDA EXPRESS, LLC

BONONI LAW GROUP, LLP
William S. Waldo (State Bar No. 073973)
wwaldo@bononilawgroup.com
Peter C. Flanderka (State Bar No. 144538)
pflanderka@bononilawgroup.com
Anne S. Kelson (State Bar No. 257851)
akelson@bononilawgroup.com
915 Wilshire Blvd., Suite 1950
Los Angeles, California 90017
Telephone: (213) 553-9200
Facsimile: (213) 553-9215

Attorneys for Plaintiff
PATRICIA PELTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA PELTON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PANDA RESTAURANT GROUP, INC., a California Corporation; PANDA EXPRESS, LLC, a business entity; JASON WONG, an individual, and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 10-CV-08458-CAS (MANX)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:      July 9, 2012<br>Hearing Time:      10:00 a.m.<br><br>Complaint Filed:   September 29, 2010<br>Removed to Fed.:   November 5, 2010 |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.       INTRODUCTION .................................................................. 1

II.      BACKGROUND ..................................................................... 2

    A.     Plaintiff Files a Hybrid Complaint in Superior Court. ................... 2

    B.     Plaintiff Dismisses the Individual Defendant and her
        Individual Claims. ...................................................................... 3

    C.     The Court Certifies a PAGA Class and Orders Notice of
        the Action to be Mailed to the Class. ....................................... 3

    D.     Plaintiff's Counsel Investigates Panda's Wage Statements. .......... 4

    E.     Panda Files Dispositive Motions. ............................................... 5

    F.     The Parties Negotiate a Settlement Through Mediation. ............... 5

        1.     Class Definition ................................................................ 6

        2.     Class Settlement Amount ................................................. 6

        3.     PAGA Penalty Award to the LWDA ............................... 6

        4.     Individual Settlement Awards ......................................... 6

        5.     Additional Settlement Payment to Plaintiff ..................... 7

        6.     Attorneys' Fees, Costs, and Expenses ............................. 7

        7.     Class Representative Enhancement Fee ............................ 7

        8.     Claims Administration ..................................................... 7

        9.     The Release ...................................................................... 7

        10.    Notice of Settlement ........................................................ 8

    G.     Preliminary Approval of Settlement ......................................... 8

    H.     Notice of Class Action Settlement ............................................ 8

i

III.     ARGUMENT ..................................................................................... 9

    A.     The Class Action Settlement is Fair, Adequate, and Reasonable ................................................................... 10

        1.     Every Relevant Factor Supports Final Approval of the Settlement .............................................. 10

        2.     The Response of the Class Supports Final Approval ........ 14

    B.     The Notice Provided Was the Best Practicable Under the Circumstances ................................................. 15

IV.     CONCLUSION ................................................................................. 17

12248644_2.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Aguilar v. Melkonian Enters.*
   2006 U.S. Dist. LEXIS 80690 (E.D. Cal. Nov. 3, 2006) .................................. 15

*Amchem Products, Inc. v. Windsor*
   521 U.S. 591 (1997) ....................................................................... 15

*Churchill Village, L.L.C. v. GE*
   361 F.3d 566 (9th Cir. 2004) ................................................. 1, 9, 15

*Franklin v. Kaypro*
   884 F.2d 1222 (9th Cir. 1989) ......................................................... 9

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ......................................................... 9

*Hopson v. Hanesbrands Inc.*
   No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .................................................................................. 12

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................... 10

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) .......................................................... 15

*White v. Nat'l Football League*
   41 F.3d 402 (8th Cir. 1994) ......................................................... 15

CALIFORNIA CASES

*7-Eleven Owners for Fair Franchising v. Southland Corp.*
   85 Cal. App. 4th 1135 (2000) ....................................................... 15

*Nordstrom Com. Cases*,
   186 Cal. App. 4th 576 (2010) ....................................................... 12

*Officers for Justice v. Civil Serv. Comm.'s*,
   668 F.2d 615 (9th Cir. 1982) ....................................................... 10

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FEDERAL RULES AND STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ........................................3

Federal Rule of Civil Procedure 23(c)(2) ...............................................15

Federal Rule of Civil Procedure 23(c)(2)(B) ............................................4

Federal Rule of Civil Procedure 23(e).................................................9, 10

Federal Rule of Civil Procedure 23(e)(2) ..............................................10

Federal Rule of Civil Procedure 30(b)(6)............................................4, 11

**CALIFORNIA STATUTES**

California Civil Code § 51.7.............................................................3

California Civil Code § 52...............................................................3

California Civil Code § 52.1.............................................................3

California Civil Code § 52(b)(2) ........................................................3

California Labor Code § 226(a).....................................................1, 2, 8

California Labor Code § 226(a)(6)..................................................3, 14

California Labor Code § 226(e)...............................................2, 3, 5, 7

California Labor Code § 2699(i) .......................................................12

California Fair Employment and Housing Act,
      Cal. Gov. Code §§ 12940, *et seq.* ............................................2, 3

California Labor Code Private Attorneys General Act,
      CAL. LABOR CODE §§ 2699, *et seq.* ........................................passim

**OTHER AUTHORITIES**

California Constitution, Article III, § 3 .............................................5, 11

*Herr, Manual for Complex Litigation, Fourth* § 21.6 at 309 (2004) .....................10

iv

*Manual for Complex Litigation, Fourth* (4th ed. 2004) § 21.632- 34....................10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff Patricia Pelton ("Plaintiff") and defendants Panda Restaurant Group, Inc. and Panda Express, LLC (collectively, "Panda") seek final approval of the proposed settlement ("Settlement") of this action.

This action centers on Plaintiff's claim that Panda violated Labor Code section 226(a) by omitting the beginning date of the pay period from its wage statements. On that basis, Plaintiff asserted a claim for civil penalties under the California Labor Code Private Attorneys General Act, CAL. LABOR CODE §§ 2699, *et seq.* ("PAGA"). Plaintiff and Panda (collectively, the "Parties") reached a settlement of Plaintiff's class-wide PAGA claim after counsel for Plaintiff conducted a full and complete investigation and engaged in substantial discovery sufficient to allow Plaintiff's counsel to determine the likely range of outcomes should this matter go to trial.  The resolution was the result of arms-length negotiations – including a full day mediation with a highly skilled and experienced mediator – and is an excellent result in light of all the relevant circumstances.

This motion follows a successful settlement administration authorized by the Court's March 26, 2012 Order Preliminarily Approving Class Action Settlement. (*See* Declaration of Daphne P. Bishop ("Bishop Decl."), ¶ 4, Ex. C)  In particular, after the Court granted its preliminary approval, notice was sent to approximately 10,254 Class Members. (*See* Declaration of Krista Tittle ("Tittle Decl."), ¶ 6) Notably, a mere eleven (11) Class Members (0.10%) returned opt out forms.  (*See* Tittle Decl., ¶ 8)  ***Not one person filed an objection.***  (*See* Tittle Decl., ¶ 9)

The proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable. S*ee Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004).  If the Settlement receives final approval, the California Workforce Development Agency ("LWDA") will

Case No. 10-CV-08458-CAS (MANx)

12248644_2.DOC

receive approximately $600,000 in PAGA penalties.  Class Members who received wage statements that did not show the beginning date of the pay period during the Class Period will receive a maximum settlement payment of approximately $31.64 and a minimum settlement payment of approximately $1.13, depending on the number of wage statements the Class Member received during the Class Period.  The positive response of the Class Members to the Settlement provides strong support that final settlement approval is appropriate.  The Parties therefore request that the Court approve the Settlement as fair, adequate, and reasonable, and enter judgment accordingly.

## II.   **BACKGROUND**

### A.   Plaintiff Files a Hybrid Complaint in Superior Court.

On September 29, 2010, Plaintiff filed a Verified Class Action Complaint against Panda in the Superior Court of the State of California, Los Angeles County, on behalf of herself and all others similarly situated.  (*See* Declaration of William S. Waldo ("Waldo Decl."), ¶ 21)  The Complaint alleged that Panda violated Labor Code section 226(a) by failing to show the inclusive dates of the pay period on its wage statements.  (*See* Waldo Decl., ¶ 21)  On that basis, the Complaint alleged the following claims on behalf of Plaintiff and putative class of similarly situated employees: (1) failure to furnish accurate wage statements in violation of Labor Code § 226(a); and (2) penalties under PAGA ("Class Claims").  In connection with the Class Claims, the Complaint sought statutory penalties under Labor Code § 226(e), civil penalties under PAGA, attorneys' fees, and costs of suit.  (*See* Waldo Decl., ¶ 21)

In addition, Plaintiff individually alleged claims against Panda and Jason Wong ("Wong"), Plaintiff's former supervisor, in connection with the termination of her employment from Panda.  (*See* Waldo Decl., ¶ 21)  Specifically, Plaintiff alleged the following claims in the Complaint: (1) harassment (hostile work environment) in violation of the California Fair Employment and Housing Act, Cal. Gov. Code §§

2

12940, *et seq.* ("FEHA"); (2) failure to prevent harassment/discrimination in violation of FEHA; (3) retaliation in violation of FEHA; (4) civil rights violations under California Civil Code §§ 51.7, 52, and 52.1; and (5) wrongful termination in violation of public policy ("Individual Claims").  (*See* Waldo Decl., ¶ 21)  The Complaint sought the following forms of damages in connection with Plaintiff's Individual Claims: lost wages, bonuses, and benefits; physical and emotional injuries; punitive damages; $25,000 in penalties pursuant to California Civil Code § 52(b)(2); attorneys' fees and costs; pre- and post-judgment interest; and punitive damages.  (*See* Waldo Decl., ¶ 21)

On November 5, 2010, Panda removed the action to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (*See* Waldo Decl., ¶ 22)

B.     Plaintiff Dismisses the Individual Defendant and her Individual Claims.

On February 17, 2011, Plaintiff filed an Amended Notice of Dismissal of Jason Wong, to dismiss Wong from the Action without prejudice.  (*See* Waldo Decl., ¶ 23)  Plaintiff filed a Request for Dismissal of Claims One-Five of the Verified Complaint, which sought to dismiss the Individual Claims without prejudice, on June 10, 2011.  (*See* Waldo Decl., ¶ 23)  The Court accordingly dismissed the Individual Claims without prejudice on June 27, 2011.  (*See* Waldo Decl., ¶ 23)

C.     The Court Certifies a PAGA Class and Orders Notice of the Action to be Mailed to the Class.

On May 3, 2011, the Court certified a class defined as follows:

> All persons employed by Panda Restaurant Group, Inc., or Panda Express, LLC in California from August 27, 2009 to August 27, 2010, who, at the time of each payment of wages, were not furnished with an accurate itemized statement in writing showing 'the inclusive dates of the pay period for which the employee is paid' as required by Labor Code Section 226(a)(6), entitling members of the Class to recover penalties pursuant to Labor Code Section 2699(f)(2).

("Class Members").  (*See* Waldo Decl., ¶ 24)  Plaintiff did not seek to certify a class for purposes of seeking statutory penalties under Labor Code § 226(e).  (*See* Waldo

3

Decl., ¶ 24)

Because the Court certified Plaintiff's PAGA claim, Rule 23(c)(2)(B) required that notice be provided to the Class.  On July 25, 2011, the Court approved the Parties' proposed Notice of Class Action.  (*See* Waldo Decl., ¶ 26)  Shortly thereafter, Panda provided an electronic list of names and last known addresses for Class Members to Simpluris, Inc. ("Claims Administrator").  (*See* Bishop Decl., ¶ 2)

The Claims Administrator processed and updated the addresses provided by Panda using the National Change of Address Database maintained by the U.S. Postal Service.  (*See* Waldo Decl., ¶ 26)  The Claims Administrator mailed the notice to 10,560 potential Class Members on August 15, 2011.  (*See* Waldo Decl., ¶ 26)  The Claims Administrator performed skip traces to obtain current addresses for 868 Class Members whose notices were returned as undeliverable.  (*See* Waldo Decl., ¶ 26) On September 14, 2011, the Claims Administrator mailed notice to 552 potential Class Members for whom it was able to locate current addresses.  (*See* Waldo Decl., ¶ 26)

On February 16, 2012, Panda provided the Claims Administrator with the names and last known addresses of additional Class Members to whom notice had not previously been mailed.  (*See* Bishop Decl., ¶ 2)  The Claims Administrator mailed notice to thirty-two (32) potential Class Members on February 23, 2012.  (*See* Bishop Decl., ¶ 2, Ex. A)  Class Members who were included in that mailing by the Claims Administrator had until April 9, 2012 to opt out.  (*See* Bishop Decl., ¶ 2, Ex. A)

D.      Plaintiff's Counsel Investigates Panda's Wage Statements.

In the meantime, the Parties conducted significant investigation of the facts and law during the prosecution of this action.  Such investigation has included the exchange of relevant information regarding the wage statements that were furnished to putative class members employed by Panda from August 27, 2009 to August 27, 2010; Rule 30(b)(6) depositions of Panda concerning Panda's wage statements;

4

discussions and meetings between representatives of the Parties; and interviews of witnesses.  (*See* Waldo Decl., ¶ 27)  In addition, counsel for the Parties have investigated the applicable law regarding the claims and defenses to such claims, as well as the damages alleged by Plaintiff.  (*See* Waldo Decl., ¶ 27)

E.   Panda Files Dispositive Motions.

On January 17, 2012, Panda filed a Motion for Judgment on the Pleadings, in which Panda sought dismissal of Plaintiff's Class Claim for PAGA penalties on the ground that PAGA violates Article III, section 3 of the California Constitution (the separation of powers doctrine).  (*See* Waldo Decl., ¶ 28)  Panda filed a Motion for Summary Judgment, or Alternatively, Partial Summary Judgment on January 30, 2012, in which Panda asked the Court to exercise its discretion under PAGA to award no penalties for its inadvertent, harmless wage statement error.  (*See* Waldo Decl., ¶ 28)  Panda also sought judgment of Plaintiff's individual claim for statutory penalties under LC § 226(e) on the ground that Plaintiff did not suffer injury as a result of the omission of the beginning date of the pay period on her wage statements.  (*See* Waldo Decl., ¶ 28)  Both motions were scheduled to be heard on March 19, 2012.  (*See* Waldo Decl., ¶ 28)

F.   The Parties Negotiate a Settlement Through Mediation.

On February 17, 2012, the Parties, by and through their counsel, and pursuant to mediation, agreed to settle the action.  (*See* Waldo Decl., ¶ 30)  The Parties used Michael Wolfram, from the Court's panel of mediators, to mediate the case.  (*See* Waldo Decl., ¶ 30)  Mr. Wolfram is a highly regarded mediator who practiced labor and employment law with the law firm Morgan, Lewis & Bockius, LLP for twenty-six years, and is well-versed in wage and hour class action lawsuits.  (*See* Waldo Decl., ¶ 30)  The settlement was reduced to writing and executed by all of the Parties in a Stipulation of Settlement.  (*See* Stipulation of Settlement, attached as Exhibit A to the Waldo Decl.)  The terms of the of Settlement are set forth below:

### 1.   Class Definition

The parties agreed to expand the Class definition to include employees who were hired between August 28, 2010 and September 21, 2010 (the date on which Panda modified its wage statements to include the beginning date of the pay period). (*See* Stipulation of Settlement, ¶ I.E.)

### 2.   Class Settlement Amount

The Class Settlement Amount will be calculated as follows: $80 times the number of Class Members who do not opt out.  (*See* Stipulation of Settlement, ¶ V.A.)  Since there are approximately 10,000 Class Members, the Class Settlement Amount will be approximately $800,000.  (*See* Bishop Decl., ¶ 2)

### 3.   PAGA Penalty Award to the LWDA

Seventy-five percent (75%) of the Class Settlement Amount will be paid to the California Labor and Workforce Development Agency ("LWDA") as PAGA penalties.  (*See* Stipulation of Settlement, ¶ V.B.)  The remaining 25% of the Class Settlement amount is referred to as the "Net Settlement Amount."  (*See* Stipulation of Settlement, ¶ I.L.)

### 4.   Individual Settlement Awards

Each Class Member who does not opt out will be entitled to receive a portion of the Net Settlement Amount based on the number of wage statements that he or she received during the Class Period, which is defined as August 27, 2009 to September 21, 2010.  (*See* Stipulation of Settlement, ¶ V.C.)  Specifically, each wage statement that Panda furnished to Class Members who do not opt out will be assigned a penalty value, which is referred to as the "Baseline Wage Statement Penalty."  (*See* Stipulation of Settlement, ¶ V.C.)  The Baseline Wage Statement is calculated by dividing the Net Settlement Amount by the total number of wage statements that were furnished to Class Members who did not or do not opt out without the inclusive dates of the pay period during the Class Period.  (*See* Stipulation of Settlement, ¶ I.B.)  Each Class Member who does not opt out shall be entitled to an Individual

Settlement Award that is calculated by multiplying the Baseline Wage Statement Penalty by the number of wage statements issued to that Class Member.  (*See* Stipulation of Settlement, ¶ V.C.)

### 5. Additional Settlement Payment to Plaintiff

In addition to the Individual Settlement Award, Panda agreed to pay Pelton $4,000.00 (Four Thousand Dollars) in settlement of her individual claim for statutory penalties under LC § 226(e).  (*See* Stipulation of Settlement, ¶ V.D.)

### 6. Attorneys' Fees, Costs, and Expenses

Class Counsel is responsible for moving to recover attorneys' fees, costs, and expenses if any.  Panda agreed to not oppose Class Counsel's motion for an award of past and future attorneys' fees, costs, and expenses not to exceed the amount of $250,000.00 (Two Hundred Fifty Thousand Dollars).  (*See* Stipulation of Settlement, ¶ V.E.)

### 7. Class Representative Enhancement Fee

Panda also agreed that it would not oppose Class Counsel's request for a class representative enhancement fee to Plaintiff in an amount not to exceed $5,000.00 (Five Thousand Dollars).  (*See* Stipulation of Settlement, ¶ V.F.)

### 8. Claims Administration

The Parties agreed that the Claims Administrator would send out notice to the class members, post relevant court filings on its website, including Plaintiff's motion for attorneys' fees and costs, to resolve any conflicts of membership in the proposed class, and to mail the settlement checks to Class Members who do not opt out.  (*See* Stipulation of Settlement, ¶ VI.A.)  Panda agreed to pay actual claims administration costs and fees up to $63,000.00 (Sixty-Three Thousand Dollars).  (*See* Stipulation of Settlement, ¶ V.G.)

### 9. The Release

The consideration provided by Class Members who do not opt out is a release of the claims alleged in this matter, and only those claims.  Specifically, Class

7

Members who do not opt out agreed to release all claims arising from Labor Code section 226(a) and the facts arising from the Class Claims.  (*See* Stipulation of Settlement, ¶ IV.A.)

10.     Notice of Settlement

The Stipulation of Settlement contemplated, among other things, that the Court would grant preliminary approval of the settlement.  (*See* Stipulation of Settlement, Ex. A)  The Stipulation of Settlement required that the Notice will be sent via first class mail to Class Members within twenty-one (21) days of preliminary approval.  (*See* Stipulation of Settlement, ¶ VI.B.)  The Notice advises each Class Member that they can request to be excluded from the settlement, object to the proposed settlement by filing a written objection and appearing at the Motion for Final Approval, or do nothing and be legally bound to the terms of the Settlement. (*See* Stipulation of Settlement, Ex. A)

The Claims Administrator was required to send the Notice to Class Members (including Class Members who were not previously sent notice and an opportunity to opt out of the action) using the most current addresses it can locate using the United States Post Office's Change of Address Database and skip tracing.  (*See* Stipulation of Settlement, ¶ VI.B.)

G.     Preliminary Approval of Settlement

On March 26, 2012, the Court preliminarily approved the parties' settlement. (*See* Bishop Decl., ¶4, Ex. C)

H.     Notice of Class Action Settlement

The procedures for giving notice to Class Members, as set forth in the Joint Stipulation and ordered by the Court, have been fully and properly executed. Specifically:

- On or about April 5, 2012, Panda provided the Claims Administrator with the names and last known mailing addresses of the Class Members who were

8

not previously provided with notice of the action, as well as a copy of the Notice. (*See* Bishop Decl., ¶ 5; Tittle Decl., ¶ 4)

 • On April 16, 2012, the Claims Administrator sent the Notice to 10,254 Class Members (which includes the Class Members who were not previously sent notice and an opportunity to opt out of the action) using the most current addresses it could locate using the United States Post Office's Change of Address Database. (*See* Tittle Decl., ¶¶ 5, 6) Of that mailing, 1,394 Notices were returned to the Claims Administrator. (*See* Tittle Decl., ¶ 7) Following additional searching for most current addresses, 477 Notices were re-mailed. (*See* Tittle Decl., ¶ 7) 910 Notices remain undeliverable because the Claims Administrator has not been able to locate current addresses for those Class Members despite diligent efforts. (*See* Tittle Decl., ¶ 7)

The last day for Class Members to object to or opt out of the settlement was May 31, 2012. (*See* Bishop Decl., ¶ 4, Ex. C) No Class Members have objected to the settlement. (*See* Tittle Decl., ¶ 9)

## III.   <u>ARGUMENT</u>

The policy of the federal courts is to encourage settlement before trial. *See Churchill Village*, 361 F.3d at 576 (noting "'strong judicial policy'" favoring settlements, provided they were reached through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989) ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial…[t]he economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process.")

Pursuant to Federal Rule of Civil Procedure 23(e), the Court must approve any proposed class action settlement after the following steps: (1) preliminary approval

9

of the proposed settlement at a preliminary hearing; (2) dissemination of notice of the settlement to all affected Class Members; and (3) a "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See Manual for Complex Litigation, Fourth* (4th ed. 2004) § 21.632- 34.

The first two steps of this process are now complete. The first step was completed on March 26, 2012, when this Court entered an Order granting preliminary approval of the Settlement. As detailed in the Tittle Declaration, Notice was effectuated in accordance with the Court's preliminary approval Order.  The last step in the class action settlement approval process is the final approval hearing, at which the Court will finally conclude whether the Settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

## A.   The Class Action Settlement is Fair, Adequate, and Reasonable

### 1.   Every Relevant Factor Supports Final Approval of the Settlement

Under Federal Rule of Civil Procedure 23(e), the central issue on a motion for final approval of a class action settlement is whether the settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm.'s*, 688 F.2d 615, 625 (9th Cir. 1982).  A settlement is fair, adequate and reasonable when "the interests of the class are better served by the settlement than by further litigation." *Herr, Manual for Complex Litigation, Fourth* ("Manual") § 21.6 at 309 (2004).

A settlement is presumed to be fair where, as here, the settlement is the product of arm's-length negotiations, sufficient investigation and discovery have taken place to allow counsel and the Court to act intelligently, and counsel is experienced in similar types of litigation. *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

**(a)** **The Settlement Was Based on Facts Uncovered Through Investigation, Formal Discovery, and Preparation for Mediation.**

Class Counsel was diligent and thorough in its investigation of the Class claims and in its preparation for mediation.  Class Counsel propounded and responded to written discovery, deposed Panda's Rule 30(b)(6) witnesses concerning Panda's wage statements, prepared and fully briefed Plaintiff's motion to certify her PAGA claim, and successfully opposed Defendants' motion for reconsideration of the Court's class certification order.  (*See* Waldo Decl., ¶ 27)  In addition, Class Counsel prepared for and participated in a full day of mediation.  (*See* Waldo Decl., ¶ 30)

**(b)** **The Settlement Was Reached After Evaluating the Strengths of Plaintiff's Case, Whether the Settlement Accomplished the Purposes of PAGA, and the Risks, Expense, Complexity, and Likely Duration of Further Litigation.**

This case is unusual in that the facts are largely undisputed:  Panda does not deny that the wage statements it furnished to Class Members during the Class Period did not show the inclusive dates of the pay period.  However, the amount of penalties that could be imposed, if any, was greatly contested.  In its Motion for Judgment on the Pleadings, Panda argued that the Court should strike PAGA down as unconstitutional under the separation of powers doctrine, as set forth in Article III, Section 3 of the California Constitution.  (*See* Waldo Decl., ¶ 28)

Alternatively, Panda argued in its Motion for Summary Judgment, or Alternatively, Partial Summary Judgment, the Court should exercise its discretion under PAGA to impose no civil penalties for Panda's inadvertent wage statement error.  (*See* Waldo Decl., ¶ 28)  Plaintiff contends on the other hand that PAGA is

constitutional and imposition of penalties is mandatory, and was in the process of preparing oppositions to Panda's motion at the time the Parties reached a settlement. (*See* Waldo Decl., ¶ 29)  However, ***both sides agree that the final amounts PAGA penalties could be assessed at anywhere from $0 to $17,000,000.[1]  Moreover, in the course of two hearings, the Court emphasized to the parties its discretion under PAGA to reduce penalties***  (*See* Waldo Decl., ¶ 32)

Here, the settlement amounts are more than reasonable, considering the uncertainty of the final outcome of this matter.  The Class Settlement Amount is over $800,000, as the Parties agreed to settle for $80 per non-opting out Class Member. (*See* Bishop Decl., ¶ 2; Stipulation of Settlement, ¶ V.A.)  Seventy-five percent of the Class Settlement Amount, or approximately $600,000, will go to the LWDA as required by California Labor Code section 2699(i).  *See Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *23-24 (N.D. Cal. Apr. 3, 2009) (approving a PAGA settlement of 0.3% or $1,500); *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

The remainder of the Class Settlement Amount, or approximately $200,000 will be divided among the non-opting out Class Members, based on the number of wage statements received during the Class period.  As Panda issued approximately 177,000 wage statements that did not show the beginning date of the pay period during the Class Period, the Baseline Wage Statement Penalty will be approximately $1.13 ($200,000 ÷ 177,000).  A Class Member who received the maximum number of wage statements during the Class Period will receive an Individual Settlement

---

[1] Panda issued approximately 177,000 wage statements that did not show the beginning date of the pay period during the class period.  (Bishop Decl., ¶ 3, Ex. B) PAGA allows a civil penalty of $100 per employee per violation, which means that the potential PAGA penalty could be as much as $17,000,000.

Award of approximately $31.64 ($1.13 x 28 wage statements).  A Class Member who received the minimum number of wage statements during the Class Period will receive an Individual Settlement Award of approximately $1.13 ($1.13 x 1).  Any undistributed or unclaimed Individual Settlement Awards will be returned to Panda. (*See* Stipulation of Settlement, ¶ VI.H.)

### (c)   <u>The Settlement was reached through arms-length bargaining by experienced counsel.</u>

This Agreement is the product of arms-length, non-collusive negotiations attended by experienced class counsel.  Plaintiff's counsel has considerable experience litigating wage and hour class actions.  (*See* Waldo Decl., ¶¶ 15, 17, 18, 19, 20)  On February 17, 2012, Plaintiff's counsel and Panda's counsel participated in a full day of mediation before Michael Wolfram, an experienced wage and hour attorney and mediator, who was selected from the Court's panel of mediators.  (*See* Waldo Decl., ¶ 30)

Based on Plaintiff's counsel's independent evaluation, the settlement is fair, reasonable, and adequate.  (*See* Waldo Decl., ¶ 32)  The settlement is in the best interest of the Class Members and LWDA for at least the following reasons:

- Throughout this litigation, Defendants have hotly contested both liability and damages.  Defendants' motions for summary judgment and for judgment on the pleadings asked the Court to declare that PAGA is unconstitutional. If the Court accepted Defendants' argument, the settlement value of the class claims would be zero.  Likewise, Defendants have advanced numerous arguments why the Court should award either zero dollars in PAGA penalties, or make a nominal PAGA penalty award.  In short, it is in the best interest of the class and the LWDA to accept a reasonable PAGA penalty of approximately $800,000 instead of facing the risk of recovering zero or nominal PAGA penalties;

- Defendants conceded from the beginning of this lawsuit that their

13

earnings statements failed to comply with Labor Code Section 226(a)(6) because they did not contain the beginning date of the pay period.  Almost immediately after receiving the PAGA notices sent by Plaintiffs to the LWDA, Defendants corrected the problem.  For all pay periods after September 21, 2010, the Defendants furnished their employees with earnings statements which complied with the requirements of Labor Code Section 226(a)(6);

• In response to the concerns of Defendants' counsel about the punitive nature of the potentially awardable $17 million PAGA penalty, the Court emphasized its discretion under PAGA to reduce penalties;

• Under the Joint Stipulation, Defendants will pay in the range of $800,000 in PAGA penalties.  This is a substantial PAGA penalty which is sufficiently large to both penalize Defendants for their violation of Labor Code section 226(a)(6) and deter similar violations in the future;

• The approximately $800,000 in PAGA penalties is a fixed amount which will be paid to both the LWDA and to members of the class who do not opt out, and which is not affected in any manner whatsoever by the amount of attorneys fees, costs, and expenses awarded by the Court.  By requiring the Defendants to pay costs, expenses and attorneys fees on top of a guaranteed PAGA penalty of approximately $800,000, the deterrent value of the settlement will exceed $1 million. (Waldo Decl. ¶31)

The $63,000 allocated to administration costs should also be approved as reasonable.  Simpluris has promptly and properly distributed the Notice and completed its duties in accordance with the Court's preliminary approval Order. (*See generally* Tittle Decl.)  Accordingly, the $63,000 payment is fair and reasonable and should be accorded final approval.

## 2. <u>The Response of the Class Supports Final Approval</u>

A low number of opt outs and objections is a strong indicator that a settlement

is fair and reasonable.  *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (Class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out [(1.5% of the entire Class)] and ... [a] total of nine members . . . objected to the settlement.")  In this case, Simpluris has received a total of 11 opt out forms, which represents .10% of the Class, and no objections.  (*See* Tittle Decl., ¶ 8)

### B.    The Notice Provided Was the Best Practicable Under the Circumstances

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the Class Members receive "the best notice that is practicable under the circumstances."  Fed. R. Civ. P 23(c)(2)(B); *see also*, *Churchill Village*, 361 F.3d at 575.  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir. 1993) (notice must present a fair recital of the subject matter and give Class Members an opportunity to be heard).  Federal courts have made clear that individual mailings to each Class Member's last known address is a sufficient form of notice, particularly where efforts are made to locate new addresses for any undelivered notice packets.  *See e.g., Aguilar v. Melkonian Enters.*, 2006 U.S. Dist. LEXIS 80690, at 13 (E.D. Cal. Nov. 3, 2006) (granting preliminary approval of parties' plan to mail notice to Class Members' last known address as identified through Defendants' records and to re-mail any returned mail, if necessary); *see also, White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618-620 (1997).

The Notice of Class Action Settlement that the Court approved in this case advised Class Members of the essential terms of the Settlement, set forth the procedure for opting out of the Class or filing objections to the Settlement, and

provided the date, time and place of the final fairness hearing.  (*See* Tittle Decl., ¶ 4, Ex. A). The Notice also provided the details of the case, the proposed settlement, and the specific options available to Class Members.  In particular, it explained how the Class Settlement Amount would be distributed, thereby allowing Class Members make an informed decision about whether to opt out, object, or take other or no action.  In short, the Notice provided all essential information that enabled Class Members to exercise their rights and make informed decisions regarding the proposed settlement.

Moreover, the Parties are confident that the notice by mailing to the last known address and to more recent addresses obtained through reasonable investigation was the best means available to reach Class Members.  Simpluris made reasonable efforts to locate any Class Members whose notice packets were returned. (*See* Tittle Decl. ¶ 7)  Of the 10,524 Notices, 910 have been deemed undeliverable, which represents less than 10% of the Class.  (*See* Tittle Decl. ¶ 7)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12248644_2.DOC

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, the Parties request that the Court grant final approval of this Settlement and approve distribution of the Settlement funds to the LWDA and Class Members, as set forth in the Stipulation.

Dated:  June 4, 2012                          BONONI LAW GROUP, LLP

                              By:   <u>/s/ William S. Waldo, Esq.</u>
                                    William S. Waldo
                                    Peter C. Flanderka
                                    Anne S. Kelson
                                    Attorneys for Plaintiff
                                    Patricia Pelton

Dated:  June 4, 2012                          OGLETREE, DEAKINS, NASH,
                                              SMOAK & STEWART, P.C.

                              By:   <u>/s/ Daphne P. Bishop, Esq.</u>
                                    Jack S. Sholkoff
                                    Daphne Pierre Bishop
                                    Attorneys for Defendants
                                    Panda Restaurant Group, Inc. &
                                    Panda Express, LLC